IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BOE W. ADAMS,

      Plaintiff,

      v.                            CASE NO.  24-3135-JWL

SCOTT KINCAID, et al.,

      Defendants.

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Boe W. Adams is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Amended Complaint that are discussed herein.

## I.  Nature of the Matter before the Court

Plaintiff is incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas. The Court granted Plaintiff leave to proceed in forma pauperis. On October 22, 2024, the Court entered a Memorandum and Order to Show Cause (Doc. 14) ("MOSC") ordering Plaintiff to show good cause why his Complaint should not be dismissed and granting him an opportunity to submit an amended complaint to cure the deficiencies.  This matter is before the Court for screening Plaintiff's Amended Complaint (Doc. 15).  The Court's screening standards are set forth in the Court's MOSC.

As Count I, Plaintiff alleges cruel and unusual punishment in violation of the Eighth Amendment based on the conditions at the Lansing Correctional Facility ("LCF") from September 6, 2022, through December 2023.  (Doc. 15, at 9.)  Plaintiff alleges that Defendant Miller placed him in an MRA cell for two months "without demonstration of any of the behaviors that support such placement."  *Id*. at 2.  Plaintiff alleges that his tablet was shut off

more than once for speaking out about unfair practices despite the lack of a violation of any tablet/communication rules.  *Id.*  Plaintiff also filed complaints regarding "no cleaning supplies passed at all, no bedding exchange ever, no haircuts being offered, no clean clothes available upon showering consistently."  *Id.*  Plaintiff alleges that he was not able to contact his dying mother for over two months because the phones were broken in the unit and Miller failed to replace them.  *Id.*  Plaintiff claims that Miller called Plaintiff a "piece of shit."  *Id.*  He also alleges that there were six or more instances "where high ranking staff said most [sic] disrespectful, nasty, unprofessional slander towards inmates."  *Id.* at 8.

As Count II, Plaintiff alleges a due process violation based on the loss of over $500.00 in property at LCF on September 6, 2022.  *Id.* at 9.  Plaintiff alleges that he was being moved to segregation for his own safety.  *Id.* at 5.  Plaintiff alleges that before leaving his unit he told Defendant Powell that he was worried about his property.  He claims that Powell failed to secure Plaintiff's property, resulting in someone stealing it.  *Id.* at 3.  Plaintiff alleges that Powell took 20 to 30 minutes to go pack Plaintiff's stuff, despite claims that it was done immediately.  *Id.*  Plaintiff alleges that Defendant Davis covered up Defendant Kincaid's perjury about the incident.  *Id.* at 4.  Plaintiff alleges that Kincaid lied "about 3 things" and Plaintiff's property was stolen due to staff negligence.  *Id.*

As Count III, Plaintiff alleges a due process violation based on his use of the grievance process at LCF.  *Id.* at 10.  Plaintiff alleges that Warden Cheeks and Governor Kelly failed to remedy issues.  *Id.* at 4–6.  Plaintiff alleges that he also wrote to Defendant Zmuda, the Secretary of Corrections, and Zmuda responded stating that video was no longer available.  *Id.* at 7.  Plaintiff alleges that he did not receive responses for some of his grievances, some responses were untimely,  and none of his grievance requests were granted.  *Id.* at 8.

Plaintiff names as defendants: Scott Kincaid, CS1 Sergeant at LCF; Sherri Powell, CS1 Sergeant at LCF; Jeff Zmuda, KDOC Secretary of Corrections; Laura Kelly, Governor of Kansas; Angela Miller, Unit Team Supervisor at LCF; Meghan Davis, KDOC Corrections Manager II; and Chandler Cheeks, LCF Warden. For relief, Plaintiff seeks punitive damages and compensatory damages for the loss of his property "due to negligence and corrupt practices to cover it up." *Id*. at 11.

## II. DISCUSSION

### 1. Cruel and Unusual Punishment

Plaintiff alleges in Count I that he was subjected to cruel and unusual punishment at LCF from September 6, 2022, through December 2023. Plaintiff alleges that Defendant Miller placed him in an MRA cell for two months; his tablet was shut off more than once; and he filed complaints regarding the lack of cleaning supplies, bedding, haircuts, and clean clothing. He was also unable to contact his dying mother for over two months because the phones were broken in the unit and Miller failed to replace them. Plaintiff claims that Miller called Plaintiff a "piece of shit," and other staff made disrespectful, nasty, and unprofessional comments toward inmates.

A prison official violates the Eighth Amendment when two requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id*. To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97,

103 (1976).  The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted).  Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834.  Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id*.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id*.  It is not enough to establish that the official should have known of the risk of harm. *Id*.

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)).  "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id*.  As the severity of

the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id.* (citations omitted). Plaintiffs' allegations fail to allege a "sufficiently serious" deprivation or facts showing he is "incarcerated under conditions posing a substantial risk of serious harm."

Plaintiff alleges that he was housed in MRA or segregation while incarcerated at LCF. Plaintiff is no longer incarcerated at LCF. Furthermore, Plaintiff does not have a constitutional right to dictate where he is housed, whether it is which facility or which classification within a facility. *See Schell v. Evans*, 550 F. App'x 553, 557 (10th Cir. 2013) (citing *Meachum*, 427 U.S. at 228–29; *Cardoso v. Calbone*, 490 F.3d 1194, 1197–98 (10th Cir. 2007). Moreover, jail officials are entitled to great deference in the internal operation and administration of the facility. *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979).

Plaintiff alleges that he was subjected to inappropriate comments. The Court noted in the MOSC that Plaintiff does not state a claim regarding verbal harassment. The conduct of which Plaintiff complains does not reach the magnitude of a constitutional violation as required to state a claim under § 1983. While the Court certainly does not condone these comments, and finds them unprofessional, they do not rise to the level of a constitutional violation. The Tenth Circuit has found that "[m]ere verbal threats or harassment do not rise to the level of a constitutional violation unless they create 'terror of instant and unexpected death.'" *Alvarez v. Gonzales*, 155 F. App'x 393, 396 (10th Cir. 2005) (unpublished) (finding no constitutionally protected right where plaintiff claimed guard antagonized him with sexually inappropriate comment), *quoting Northington v. Jackson,* 973 F.2d 1518, 1524 (10th Cir. 1992). The type of limited, nonphysical

conduct alleged by Plaintiff, while inappropriate and unprofessional, is not objectively serious enough to give rise to an Eighth Amendment violation. *See Barney v. Pulsipher*, 143 F.3d 1299, 1310 n.11 (10th Cir. 1998).

Plaintiffs' allegations fail to allege a sufficiently serious deprivation or facts showing he was incarcerated at LCF under conditions posing a substantial risk of serious harm. Plaintiff has failed to show that Defendants disregarded an excessive risk to his health or safety or that they were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference. Plaintiff's claims suggest, at most, negligence, and are subject to dismissal. Plaintiff should show good cause why his Eighth Amendment claim in Count I should not be dismissed for failure to state a claim.

### 2. Property Claim

Plaintiff seeks damages for the loss of his property. The Court found in the MOSC that Plaintiff's property claim is subject to dismissal. Deprivations of property do not deny due process as long as there is an adequate post-deprivation remedy. A due process claim will arise only if there is no such procedure or it is inadequate. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Smith v. Colorado Dept. of Corr.*, 23 F.3d 339, 340 (10th Cir. 1994) ("Fourteenth Amendment due process guarantees pertaining to property are satisfied when an adequate, state postdeprivation remedy exists for deprivations occasioned by state employees.").

Kansas prisoners have an adequate state post-deprivation remedy. *See generally, Sawyer v. Green*, 316 F. App'x 715, 717, 2008 WL 2470915, at *2 (10th Cir. 2008) (finding Kansas county prisoner could seek relief in state courts to redress alleged deprivation of property). Plaintiff has failed to allege that an adequate post-deprivation remedy was unavailable. Because an adequate, state post-deprivation remedy exists, Plaintiff must show good cause why his

property claim in Count II should not be dismissed for failure to state a claim.

### 3. Responses to Grievances

Plaintiff's claims in Count III are based on Plaintiff's dissatisfaction with the grievance process and his claims that Defendants failed to properly respond to his grievances. Plaintiff acknowledges that a grievance procedure was in place at LCF and that he used it. Plaintiff's claims relate to his dissatisfaction with responses to his grievances. The Tenth Circuit has held several times that there is no constitutional right to an administrative grievance system. *Gray v. GEO Group, Inc.*, No. 17–6135, 2018 WL 1181098, at *6 (10th Cir. March 6, 2018) (citations omitted); *Von Hallcy v. Clements*, 519 F. App'x 521, 523–24 (10th Cir. 2013); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *see also Watson v. Evans*, Case No. 13–cv–3035–EFM, 2014 WL 7246800, at *7 (D. Kan. Dec. 17, 2014) (failure to answer grievances does not violate constitutional rights or prove injury necessary to claim denial of access to courts); *Strope v. Pettis*, No. 03–3383–JAR, 2004 WL 2713084, at *7 (D. Kan. Nov. 23, 2004) (alleged failure to investigate grievances does not amount to a constitutional violation); *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) (finding that "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials"). Plaintiff's claims regarding the grievance process and the failure to properly respond to grievances are subject to dismissal for failure to state a claim.

## III. Motion to Appoint Counsel

Plaintiff has filed a Motion to Appoint Counsel, arguing that he has a mental health diagnosis that prevents him "at all times from understanding reasoning well." (Doc. 17, at 1.) He also argues that he does not have access to proper legal resources and that the process is an

unfair burden on him under the circumstances.  *Id.*  He asks for the appointment of counsel if his case is allowed to proceed.  *Id.*

The Court has considered Plaintiff's motion for appointment of counsel.  There is no constitutional right to appointment of counsel in a civil case.  *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995).  The decision whether to appoint counsel in a civil matter lies in the discretion of the district court.  *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).  "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel."  *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)).  It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case."  *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims."  *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979).  The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments.  The Court denies the motion without prejudice to refiling the motion if Plaintiff's Amended Complaint survives screening.

## IV.  Response Required

Plaintiff is required to show good cause why Plaintiff's Amended Complaint should not

be dismissed for the reasons stated herein.  Failure to respond by the deadline may result in dismissal of this matter without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Appoint Counsel (Doc. 17) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **January 6, 2025,** in which to show good cause, in writing to the undersigned, why Plaintiff's Amended Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated December 4, 2024, in Kansas City, Kansas.**

S/  John W. Lungstrum
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**